State *v.* Hernando and Bluff City Insurance Companies.

STATE *v.* HERNANDO INSURANCE COMPANY,

AND

STATE *v.* BLUFF CITY INSURANCE COMPANY.

(*Jackson.* June 16, 1896.)

1. TAXATION. *Charter exemption construed.*

The capital stock of a corporation is not exempt from taxation under a provision in its charter that it "shall pay to the State an annual tax of one-half of one per cent. on each share of capital stock subscribed, which shall be in lieu of all other taxes." *(Post, pp. 87–100.)*

Constitution construed: U. S. Const., Art. I., Sec. 10.

Cases cited and approved: 161 U. S., 134–148, modifying 95 U. S., 679; 104 U. S., 493; Memphis *v.* Home Insurance Co., 91 Tenn., 558; Memphis *v.* Memphis City Bank, 91 Tenn., 574.

Cited and overruled: Union Bank *v.* State, 9 Yer., 490; Memphis *v.* Hernando Insurance Co., 6 Bax., 527; Bank *v.* Memphis, 6 Lea, 703; Memphis *v.* Farrington, 8 Bax., 539; Bank *v.* McGowen, 6 Bax., 703; State *v.* Butler, 13 Lea, 400; State *v.* Butler, 86 Tenn., 614; Memphis *v.* Bank and Insurance Companies, 91 Tenn., 546; State *v.* Bank, 95 Tenn., 221.

2. FEDERAL QUESTION. *State Courts yield to Federal.*

A decision of the United States Supreme Court against a contract exemption from taxation on capital stock of corporations, will be followed by the State Court, even if the latter thinks the exemption should be sustained, and its decision to that effect would not be reviewable. *(Post, p. 99.)*

Case cited and approved: 6 Wheat., 264–384.

3. SAME. *Same.*

A holding by the United States Supreme Court that the State decisions on a given subject have not been so long and firmly established as to constitute a rule of property, is conclusive on

State *v.* Hernando and Bluff City Insurance Companies.

the State Courts, where a Federal question is involved. (*Post, p. 99.*)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County. W. D. BEARD, Ch.

C. WEATHERFORD and METCALF & WALKER for State.

MORGAN & McFARLAND for Insurance Companies.

GEO. GILLHAM, Sp. J. These cases involve the same questions, and may be decided together.

The first is a bill filed by the State of Tennessee and the County of Shelby against the Hernando Insurance Company *et al.*, to collect State and County taxes for the years 1887, 1888, 1889, 1890, and 1891, with interest, attorney's fees, etc., upon the capital stock of the defendant corporation, or, in the alternative, upon the shares of stock in the hands of the shareholders.

The second is a similar bill against the Bluff City Insurance Company, to collect State and County taxes, with interest, attorney's fees, etc., for the same years, upon the capital stock, or, in the alternative, upon the shares of stock in the hands of the shareholders.

The bills aver that the defendant corporations were duly chartered under the laws of this State prior to 1870, and that by the tenth section of each of said charters it is provided: "Said company shall pay to the State an annual tax of one-half of one per cent. on each share of capital stock subscribed, which shall be in lieu of all other taxes." That the State, by its revenue laws, had imposed such taxes, and that the same had been duly assessed against said corporations and shareholders.

The defendants in the Court below moved to dismiss the suits, on the ground that the bills upon their face showed that, by the charter of the defendant company, both its capital stock and shares of stock were exempt from taxation other than that imposed by the charter, and that the laws of the State, undertaking to impose such taxes, were in conflict with Section 10, Article I., of the Constitution of the United States.

The motions were sustained, and the bills, on November 22, 1894, dismissed.

The State of Tennessee and the County of Shelby have, by writs of error, brought the cases to this Court, and have assigned appropriate errors, the error assigned being that the capital stock of each of the defendant corporations was legally subject to the taxes imposed.

. In dismissing these bills, the Chancellor doubtless followed the law as announced by this Court in *Memphis* v. *Bank and Insurance Companies*, 7 Pickle,

546, and the writs of errors, we assume, are now prosecuted to get the supposed benefit of more recent decisions made upon the subject by the Supreme Court of the United States.

In the year 1836 the charter of the Union Bank of Tennessee was brought before this Court for construction. The eleventh section of that charter provides: "In consideration of the privileges granted by the charter, the bank agrees to pay annually the one-half of' one per cent. on the amount of the capital stock paid in by the stockholders other than the State." The Court, Judge Turley delivering the opinion, held that the exemption was of the capital stock, but that the shares of stock, so far as held by resident owners, were taxable. *Union Bank* v. *State*, 9 Yer., 490.

In 1873 this Court held, Judge Nicholson delivering the opinion, that the city of Memphis could not exact from the Hernando Insurance Company (one of the present defendants), a license tax, and upon the ground that, under its charter, the corporation was not subject to other or further taxation than the charter tax upon its capital stock, citing and approving the case of *Union Bank* v. *State*, 9 Yer., 490; *City of Memphis* v. *Hernando Insurance Company*, 6 Bax., 527.

At the same term, 1873, in case of *DeSoto Bank* v. *City of Memphis*, Judge Freeman delivering the opinion, where it was sought by the city to tax the real estate of the corporation, in which a part

of its capital was invested, it was assumed that the exemption was of the capital stock, and that the shares of stock in the hands of the shareholders were taxable. DeSoto Bank v. City of Memphis, 6 Bax., 415.

In 1876 this Court, Judge Freeman delivering the opinion, in the City of Memphis v. Farrington, construing the charter of the Union & Planters' Bank and others, held the capital stock not subject to general taxation, but that the shares of stock were taxable. This case went by writ of error to the Supreme Court of the United States, and was, in 1877, decided, Justice Swayne delivering the opinion. 95 U. S., 679. That Court held that the charter tax was upon the shares of stock, and the same not being subject to other taxation than the charter tax, the decree of this Court was reversed.

In 1881, in Bank of Commerce v. McGowen, 6 Lea, 703, Judge Cooper delivering the opinion, where it was sought to tax the real estate in which a part of the bank's capital was invested, it was held that the real estate, so far as used by the bank for a banking house, was not taxable, and. upon the ground that its capital stock was exempt from general taxation, citing and approving DeSoto Bank v. City, 6 Bax., 415.

In this case, the Farrington case (95 U. S., 679), was first cited by this Court. Of that case, Judge Cooper, at page 705, says: "It was there held

that the provision in the bank's charter, like the one before us, is a contract, and will protect the shares of the stockholders from additional taxation. We recognize the controlling authority of that Court in such cases, and yield to its decisions. The provision in question will, therefore, protect the capital stock and the shares of the stockholders from any taxation beyond that prescribed in the charter.''

Here the Court construed the Farrington case to exempt both shares of stock and the capital stock. This case also went to the Supreme Court of the United States, by writ of error, under style of *Bank* v. *Tennessee*, 104 U. S., 493, and was decided and affirmed in October, 1881, Mr. Justice Field delivering the opinion.

Referring to the opinion of the Supreme Court of the United States in the latter case, Judge Caldwell, speaking for this Court, in *Memphis* v. *Bank and Insurance Companies*, 7 Pickle, 554, 555, truly said: "It is technically true, as contended by complainant, that the writ of error in the last case took up only so much of the controversy as this Court had decided against the bank, and that, therefore, the Supreme Court of the United States cannot properly be said to have decided that even a part of the bank's building was exempt under its charter, nevertheless, the reasoning of the Court shows that such was its opinion. Indeed, that decision, as well as the decision of this Court, was based upon the idea, (1) that the capital stock of the bank was

State *v.* Hernando and Bluff City Insurance Companies.

exempt from all taxation, except that prescribed in the charter; and (2) that, such being the case, a building in which part of its capital stock has been invested must· be exempt, so far as used by the bank for its legitimate corporate purposes, but no further.''

In 1884, in *State* v. *Butler*, 13 Lea, 400, Judge Cooke delivering the opinion, it was assumed that the Farrington case held that both the capital stock and the shares of stock were exempt from other taxation than that of the charter ·tax. Later, in 1888, in *State* v. *Butler*, 2 Pick., 614, Judge Folkes delivering the opinion, where it was again sought to tax the real estate of the Bank of Commerce, it was assumed by the Court that the capital stock of that bank was exempt from general taxation.

Still later, the city of Memphis filed bills in the Chancery Court of Memphis, seeking to recover *ad valorem* taxes for the years 1887–1891, inclusive, from the Union & Planters' Bank, the Hernando Insurance Company,° and the Bluff City Insurance Company (the last two being the present defendants), upon their capital stock, or, in the alternative, to recover from the stockholders the same amount as taxes on the shares of stock held by them respectively during said years. Upon demurrer the bills were, in the Court below, dismissed, and, upon appeal, were heard and decided by this Court in 1892, Judge Caldwell delivering the opinion. 7 Pick., 546.

These cases, therefore, involved city taxes for the

same years for which it is here sought to recover State and county taxes.

This Court, construing the Farrington case in the light of all Federal decisions bearing thereon, and especially of *Tennessee* v. *Whitworth*, 22 Fed. Rep., 80; *Tennessee* v. *Whitworth*, 117 U. S., 136; *Bank* v. *Tennessee*, 104 U. S., 493; and following the construction given that case by this Court, in *Bank of Commerce* v. *McGowan*, 6 Lea, 705; *State* v. *Butler*, 13 Lea, 406; *State* v. *Butler*, 2 Pick., 633; held that the charter tax upon the shares of stock was in lieu of all other taxes, whether against the shares of stock in the hands of the shareholders or the capital stock. The Court, at the same time, taking occasion to say that it so held only by reason of the authority of the cases of *Farrington* v. *Tennessee*, 95 U. S., 679, and *Bank* v. *Tennessee*, 104 U. S., 493, construed together, but that, as an original proposition, they would then still have held the shares subject to *ad valorem* taxation.

In *Memphis* v. *Home Insurance Co.*, 7 Pickle, 558, decided at the same term, 1892, the opinion being delivered by the same Judge, it was held that, under the charter of that company, the charter tax was upon the capital stock, and that the shares were taxable. The charter there under consideration differs from that involved in the Farrington case, its exemption clause, as there cited, being: "There shall be a State tax of one-half of one per cent. upon the amount of capital actually paid in."

State v. Hernando and Bluff City Insurance Companies.

The Court says this charter is, in legal import, the same as that of the Union Bank, construed in 9 Yer., 490, our Court thus distinguishing this class of charters from those construed in the Farrington case.

The same was again held at the same term, the opinion being delivered by the same Judge, in case of *Memphis* v. *Memphis City Bank*, 7 Pick., 574, the construction there being of the charter of the Memphis City Bank, which does not materially differ from that of the Home Insurance Company.

At the last term, in *State* v. *Bank of Commerce*, 11 Pick., 221, Gillham, Special Judge, delivering the opinion, the exemption clause of the charter of the Bank of Commerce was again construed, and, upon consideration, as we held for the first time of the full charter, we again decided that the exemption applied to the capital stock, and that the shares in the hands of the shareholders were taxable.

In 1893, after the 7th Pickle cases were decided, the State of Tennessee and Shelby County filed bills in the Circuit Court of the United States, for the Western District of Tennessee, against the Union & Planters' Bank and Bank of Commerce, to recover State and county taxes for the years 1887 to 1891. These suits, however, were by the Supreme Court of the United States, dismissed for want of jurisdiction. *Tennessee* v. *Union & Planters' Bank*, 152 U. S., 454.

After the decision of the Bank of Commerce and other cases by this Court, at the last term, the Union & Planters' Bank filed, in the Circuit Court of the United States for the Western District of Tennessee, at Memphis, a bill against the county of Shelby and others, to enjoin the collection of taxes upon its surplus and undivided profits. That Court sustained the bill, Judge Hammond delivering the opinion, and enjoined the collection of the taxes. The case was, by the defendants, appealed to the Supreme Court of the United States, was advanced for hearing, and decided in March, 1896.    161 U. S.

The Bank of Commerce and other cases decided by this Court at the last term, were by the defendants, by writ of error, also taken to that Court, were heard at the same time, and with the Union & Planters' Bank case, Justice Peckham delivering the opinion, and are reported in 161 U. S.—Bank of Commerce, Mercantile Bank, Planters' F. & M. Ins. Co., Memphis City Bank, Home Insurance & Trust Co.

The Court reversed so much of our decree in the Bank of Commerce case as held the shares of stock subject to taxation; and, on rehearing, so much only as held the $200,000 of stock issued prior to 1870 taxable.

In the Union & Planters' Bank case it was held that, under the charter of that bank and its exemption clause, its capital stock was subject to general taxation.    The Farrington case is there construed,

State *v.* Hernando and Bluff City Insurance Companies.

and the Court say that, properly understood, that case does not hold that both the shares and the capital stock are exempt from taxation.

The charter of the defendant companies does not materially differ from that of the Union & Planters' Bank.

It is insisted by complainants that this decision by the Supreme Court of the United States should, by this Court, be treated as finally settling this vexed question; that we should follow that decision and apply the principles there announced to the present cases.

Upon the other hand, defendants insist that this Court should adhere to its convictions and rulings, as repeatedly expressed from 1836 to 1895—a period of nearly sixty years—except where, under its construction of the Farrington case, this Court has, in some of the cases, held that both the capital and the shares of stock were exempt. They invoke the doctrine of *stare decisis.*

It is to be regretted that the opinion of the Supreme Court of the United States, in the Farrington case, was so worded as to have brought about the declaration by Justice Cooper, speaking for this Court in *Bank* v. *McGowan,* 6 Lea, 703, that it established an exemption of both shares of stock and capital stock from all taxation, except the one-half of one per cent. prescribed by the charter.

Of the opinion in the Farrington case Mr. Justice Peckham, in the Union & Planters' Bank case,

says: ''There are undoubtedly some expressions in the opinion of Mr. Justice Swayne which lend color to the idea that, in his belief, not only were the shares in the hands of the shareholders exempt from further taxation than that imposed ·by the charter, but that the property of' the corporation was itself exempt from any taxation other than that provided for in that section.''

It is further to be regretted that the Supreme Court of the United States, in reviewing the opinion of this Court in *Bank* v. *McGowan, supra*—an opinion that was founded upon what Judge Cooper declared to be the construction by this Court of the meaning and result of the Farrington case—did not, at that time, correct what it now decides to be an erroneous reading of its opinion in the Farrington case. It is undoubtedly true that in said case of *Bank* v. *McGowan* the question of the exemption of both the shares of stock and the capital stock was not before the Court for decision; and it is further true that the Supreme Court of the United States, in reviewing that opinion and declaration, had no power to reverse the judgment of this Court in so far as it was in favor of the bank. But this Court, finding in the case of *Bank* v. *McGowan* an explicit declaration of the supposed effect of the opinion in the Farrington case, and finding that judgment reviewed by the Supreme Court of the United States, in an opinion accepting, or seeming to accept, without question or comment, the decla-

ration made by Judge Cooper that the exemption was of both the shares of stock and the capital stock, was induced, when it came to decide the case of *Memphis* v. *Banks and Ins. Cos.* (7 Pick., 546), to believe, and felt itself constrained against its own judgment, and solely by the force of the effect attributed to these opinions of the Supreme Court of the United States, to hold that both the shares of stock and the capital stock were exempt.

The history of the litigation over this and like charters shows, at every point, a purpose, on the part of this Court, to follow, in this character of question, the opinions of the United States Supreme Court, and strikingly illustrates the importance of confining judicial opinions to the exact questions to be decided.

We cannot entertain the argument so ably pressed upon us, that this Court may, in this case, for itself, and independent of the opinion of the United States Supreme Court, determine the issue presented.

The question being whether a statute of Tennessee which imposes upon the defendants taxes, violates the obligation of their contract, is a Federal question. It is such, whether we hold the statute to be valid or void.

By the judiciary Act of 1789, Ch. 20, Sec. 25, proceedings in error are provided for only where the State Court affirms the validity of the statute. Why a writ of error should have been allowed to one party and denied to another, is a marvel in

13 p.—7

American jurisprudence. The greater wonder is, that it should have been allowed to grow hoary with age.

This provision has, possibly for the first time, done its perfect work, reduced conclusions to their last results, in the case of the *State* v. *Bank of Commerce*, decided by us at the last term, and by the Supreme Court of the United States, and again by this Court at the present terms.

At the last term we held that the exemption was of the capital stock, but that the shares were taxable. The Supreme Court of the United States held the shares not taxable, and reversed so much of the decree of this Court as so adjudged.

That Court, in that case, did not decide that the capital stock was taxable; for, as the State did not, and could not, sue out a writ of error, there was no jurisdiction. But in the Union & Planters' Bank case, which had gone up from the Federal Court, it decided that the capital stock was taxable.

After this, complainants moved this Court to change its decree, and tax the capital stock. Upon which motion, we held that he had no power over the decree of last term. The result is, that both Courts stand in a state of paralysis, neither being able to effectuate by decree its expressed opinion, and the bank thus escapes all *ad valorem* taxation, both of $200,000 of its capital stock and of its shares of stock, whilst the Union & Planters' Bank, under the same form of contract, must pay upon its capital stock. It is true that, should we

State *v.* Hernando and Bluff City Insurance Companies.

here decide that the capital stock of the defendant corporations were not subject to taxation, our decision would not be subject to review. But would this course meet the full measure of the responsibility which rests upon us? We think not in such case as this.

It has long been settled that, in our government, the Supreme Court of the United States is the final arbiter of all such Federal constitutional questions. That Court must at last decide whether a law of one of the States, when drawn in question, violates the obligation of a contract. Story on Constitution, Sec. 375–396 and notes; *Cohens* v. *Virginia*, 6 Wheat., 264–384. We should follow the spirit, not alone the letter, of that provision of the constitution, and, knowing the opinion of the Supreme Court of the United States, follow it, although our decision be not, under the present judiciary Act, subject to review.

In the Union & Planters' Bank case, 161 U. S., ——, the Supreme Court of the United States holds, that our State decisions on this subject have not been so long and firmly established as to constitute a rule of property. The result, if not the reasoning of that Court on this point, is also conclusive upon us, and must be treated as settling this question.

Entertaining these views, to put the Courts in accord, and to finally set this question at rest, we are constrained to hold, that the capital stock of

both the defendant companies enjoys no exemption from taxation, and to overrule, to this extent, our State cases herein cited which hold to the contrary.

The decree of the Chancellor in each case is reversed, and the causes remanded to the Chancery Court for further appropriate proceedings. The defendants will pay the costs of the appeal.

Judge Beard, being disqualified, did not sit in these cases.