# J. CONATSER v. J. B. REAGAN.

Middle Section.   March 24, 1928.

Case & Wright, of Jamestown, for plaintiff in error.
W. A. Garrett, of Jamestown, for defendant in error.

FAW, P. J. This is a replevin suit, brought by J. Conatser against J. B. Reagan before a Justice of the Peace of Fentress county, to recover the possession of four red elm saw logs worth from $3 to $5. The Justice of the Peace gave judgment for defendant Reagan, and plaintiff Conatser appealed to the circuit court of Fentress county, where the case was tried before the Circuit Judge, without a jury, and the court found the matters in controversy in favor of the plaintiff and rendered judgment accordingly, and adjudged that defendant pay all the costs except the cost of plaintiff's witnesses, which latter cost was adjudged against the plaintiff.

After their respective motions for a new trial had been made and overruled, each of the parties prayed, obtained and perfected an "appeal" to this court.

Each of the appeals in this case must be construed to mean an appeal in the nature of a writ of error, as a simple appeal does not lie from a judgment at law. Spalding v. Kincaid, 1 Shan. Cas., 31; Manley v. City of Chattanooga, 1 Tenn. App. Rep., 65.

We will refer to the parties as plaintiff and defendant, respectively, as they appeared on the record below.

Plaintiff and defendant are the respective owners and occupants of two adjoining tracts of land in Fentress county—the land of plaintiff lying immediately east of defendant's land. Plaintiff cut a red elm tree standing near the common boundary line of plaintiff and defendant and converted it into four saw logs which he moved to, and deposited upon, the "yard" of a sawmill in the vicinity operated by one Dan Beatty, for the purpose of having them sawed into lumber. Later, defendant learned that the tree had been cut

and that the logs were on Beatty's mill yard, and he thereupon moved the logs to his own enclosed premises. This was done without previous notice to plaintiff and without his knowledge at the time, but with the knowledge of Beatty, who made no protest. When he discovered that defendant had moved the logs to his own premises, plaintiff promptly brought this suit and obtained possession of the logs pursuant to the replevin writ, and the case was thereafter tried, with the result before stated.

The tract of land upon which plaintiff was living at the time of the transactions involved in this case was conveyed to him by a duly registered deed executed by his father, John Conatser, on March 7, 1904, and the red elm tree, from which the logs in question were cut, stood within the boundaries of the tract which the aforesaid deed to plaintiff purported to convey.

Defendant acquired title to his land by deed from his father, J. L. Reagan, in 1917, and he, in turn, acquired title from plaintiff's father, John Conatser, and J. L. Reagan's deed from John Conatser is older than the aforesaid deed of John Conatser under which plaintiff claims. Defendant undertook to prove at the trial, and insists here, that the elm tree in question stood within the boundaries of his tract as defined in his deed. There is a sharp conflict in the evidence bearing on this controversy—the issue depending upon the location of certain monuments (trees and a stone) called for in the deed. It appears, without dispute, that the elm tree in question was not within defendant's fenced enclosure, but stood between a road and a small creek, or "branch," east of defendant's fence, and which road and branch, in their general direction, paralleled defendant's fence. The location of plaintiff's fence is not definitely shown by the record, but we infer from the record that the tree was outside of plaintiff's fence also, and was in an uninclosed strip of land lying west of the branch and between the road and the branch. The trial below seems to have proceeded on the assumption that the tree stood on uninclosed land.

Without undertaking to determine where the preponderance of the evidence lies, we find ample evidence in the record which, if true, shows that the elm tree in question was not within the boundaries of defendant's tract as defined in his deed, and defendant does not claim that he was in possession of any land outside of those boundaries, and makes no claim that he was at any time in possession of the elm tree in question unless it stood on his land as described in his deed.

The finding of the trial court in favor of the plaintiff has the same weight and effect as the verdict of a jury rendered upon a proper charge, and, as it is supported by material evidence, it will not be disturbed on appeal. Weinstein v. Barrasso, 139 Tenn., 593, 595,

202 S. W., 902; Stephens v. Mason, 99 Tenn., 512, 42 S. W., 143; Robb v. Cherry, 98 Tenn., 72, 75, 38 S. W., 412; Brooks v. Paper Company, 94 Tenn., 701, 705, 31 S. W., 160; Cowan v. Singer Mfg. Co., 92 Tenn., 376, 379, 21 S. W., 663; Woodall v. Foster, 91 Tenn., 195, 198, 18 S. W., 241; Eller v. Richardson, 89 Tenn., 575, 580, 15 S. W., 650; Smith v. Hubbard, 85 Tenn., 306, 309, 2 S. W., 569.

Moreover, this court must resolve all conflicts of evidence in favor of the party who was successful below, and give him the benefit of the strongest legitimate view of the testimony introduced in his behalf. Central Mfg. Co. v. Cotton, 108 Tenn., 63, 65, 65 S. W., 403.

The defendant's first and fourth assignments of error are, in substance and effect, bottomed on the proposition that the great weight of the evidence preponderates against the finding and judgment of the trial court and in favor of the contention of the defendant. These two assignments are inconsistent with the established rule as enunciated in the cases above cited, and such assignments do not present a question which this court can consider. Railroad v. Abernathey, 106 Tenn., 722, 728, 64 S. W., 3.

There is no assignment, either in this court or in the defendant's motion for a new trial below, to the effect that there is no evidence to support the finding and judgment of the trial court.

The defendant's second assignment of error is that "the circuit court erred in declining to decide the question of title to the land upon which the tree stood from which the logs were cut, which is a vital question in the case; and should have found and adjudged that said land was owned by the defendant, which gave him the right to the possession of said logs."

And the defendant's third assignment is that "the circuit court erred in declining to decide the question of possession of the land upon which the tree stood, from which the logs were cut, which was a vital question in the case; and should have found and adjudged that defendant was in actual possession of said land when plaintiff entered thereon and cut the tree, and that therefore defendant was entitled to recapture the logs when and where found."

The last-quoted assignment (the third) must be overruled because it does not appear that the trial court declined "to decide the question of possession of the land upon which the tree stood." The final judgment entered on the minutes of the circuit court contains recitals that:

"It appeared to the court that the issue is with the plaintiff, and the court finds, orders and decrees that the four logs in question were in the possession of the plaintiff; that he had cut them off a tract of land claimed by him, covered by his deed

dated the 7th day of March, 1904, from John Conatser and wife to J. Conatser and duly and regularly registered in the Register's office of Fentress county, and that he hauled them to the custom sawmill of one Dan Beatty to have sawed into lumber, and that the said J. B. Reagan wrongfully and unlawfully took said logs out of possession of the plaintiff and unlawfully detained them from him, and that the plaintiff was clearly within his legal rights when he replevied said logs from the said Reagan, and that he, the said J. Conatser, is now entitled to retain possession of said logs.''

The clear inference from the findings just quoted is that the land on which the tree stood was in the possession of the plaintiff.

In a subsequent part of the same minute entry (following the judgment and the plaintiff's appeal), it is recited that ''the defendant J. B. Reagan insisted that he did not take possession of the logs in question unlawfully for the reason that he is the owner of the land upon which the tree stood from which the logs were cut, and insisted that the court find and hold that the deeds from J. L. Reagan and wife to him and from John Conatser to J. L. Reagan cover and include the land where said tree stood, and the court declined to find either the one way or the other on said question, holding that the same is immaterial to this action.''

With reference to defendant's second assignment, supra; it would not have been proper, as a matter of law, for the circuit court to have decided the question of the ultimate title to land in an action of replevin to recover personal property. The primary consideration in a replevin action is the right of possession, and, as to things severed from the realty, the possession of the land at that time determines the right to possession of such things, such person being in the adverse possession of the land and claiming under color of title. The court will determine the matter upon the right of possession and not upon the title to the land, and in such an action the court will not permit the title to the land to be determined. Lieberman v. Clark, 114 Tenn., 117, 132, 85 S. W., 258.

But in Lieberman v. Clark, supra, the court recognized the fact that there are cases in which the right to the possession of timber severed from the land on which it grew must be determined by the title to the land—not for the purpose of trying the question of title to the land, but for the purpose of determining the question of possession—and, in that connection, the ruling in the case of Hart v. Vinsant, 6 Heisk., 616, 618, was approved.

The case of Hart v. Vinsant, supra, was an action of replevin brought by Vinsant against Hart to recover the possession of some new rails. The rails had been cut and split by Vinsant on uninclosed land, and after they were so cut and split, Hart hauled them

away and appropriated them. The title to the land on which the trees stood out of which the rails were made was in dispute between the parties. Hart took possession of the rails because he claimed them as his property, on the ground that the trees were on his land and not within the boundaries of Vinsant's land. On the other hand, Vinsant sued for the possession of the rails as his property, insisting that the trees out of which they were made by him stood within the boundaries of his land. In the opinion of the Supreme Court, it is said:

"It is insisted for defendant that the court erred in allowing plaintiff to prove his title by parol evidence, and in refusing to allow defendant to prove his title by his deeds, and in excluding parol proof of a common dividing line between them.

"The object of the action replevin is to recover in specie personal property which has been taken or detained from the owner's possession. The plaintiff must recover either upon his title, absolute or special, or his right of possession.

"The question before the jury in this case was, in whom was the title or right of possession of the rails? This did not depend, necessarily, upon the question as to who had the title to the land. But situated as the trees were out of which the rails were made, the lands being unenclosed, and therefore not in the actual possession of either party, it became a legitimate and necessary inquiry to ascertain upon whose land they stood, and not for the purpose of trying the question of title to the land, but as a means of determining who had the right to the possession of the rails when made: 8 Bacon (Baniver) 527.

"In Clement v. Wright, 40 Penn. Rep., 250, as digested in 22 U. S. Dig., 503, it was held that 'though as a general rule title to real estate cannot be directly tried in transitory actions, yet it may be incidentally brought in question in action of replevin or trover, and then it is admissible in evidence.' This was the holding in an action of replevin for logs cut upon the land of defendant's vendor, which had been seized by the plaintiff. It was said in deciding the case, that 'in the absence of any actual adverse possession of wild timber land, the law casts the possession on the owner, and proof of title was therefore admissible, not for the purpose of trying the title, but to prove possession in the rightful owners, which possession defendant had acquired by purchase.' " See also, 23 R. C. L., pp. 859-860, and pages 867-868.

The reasoning by which the trial judge reached the conclusion that the plaintiff was entitled to the possession of the logs in controversy is not controlling on appeal. His judgment in this case

must be treated as a general verdict under a correct charge and affirmed, if it may be rested on any theory supported by material evidence. Railway Co. v. Wilson, 90 Tenn., 271, 275, 16 S. W., 613; Weinstein v. Barrasso, supra; Robb v. Cherry, supra; Brooks v. Paper Company, supra.

In the case last cited (at page 705) it is said:

"The plaintiff in error bases his assignments of error upon the special findings of the trial judge. There was no request for the Circuit Judge to reduce his findings to writing, and, under the well-established practice of this court, such findings are equivalent to a general verdict upon a correct charge, and, if there is any evidence upon which such general verdict might have been based, it will not be disturbed. If, therefore, the Circuit Judge was in error upon all his findings, or if his findings were all correct, but wholly immaterial, if there was still any theory supported by material evidence upon which a general verdict might be based, it would be in conformity with the well-recognized practice to affirm it." The defendant's assignments of error are all overruled.

As hereinbefore stated, the circuit court adjudged the costs against the defendant, except the cost of plaintiff's witnesses, which latter cost he adjudged against plaintiff. The plaintiff has assigned this adjudication of the cost of his witnesses against him as error, for the reason that (as he insists) as "the successful party" in a civil action, he was "entitled to full costs," under Shannon's Code, sec. 4938. This assignment overlooks the Act of 1917, chapter 107 (Shan. Code, sec. 4962a1), which provides that "hereafter in all civil cases, whether tried by a jury or before the court without a jury, the presiding judge shall have a right to adjudge the cost. In doing so he shall be authorized in his discretion to apportion the cost between the litigants as in his opinion the equities of the case demand."

The statute just quoted vests the trial judge with a broad "discretion" in the adjudication of costs, according to his view of "the equities of the case." A manifest abuse of discretion must affirmatively appear before an appellate court will review rulings with respect to matters intrusted by law to the discretion of the trial court. In this case, plaintiff does not attempt to point out any inequity or abuse of discretion in the taxation of cost, but rests his assignment of error entirely upon his supposed legal right to a judgment against the defendant for "full costs" under sec. 4938, Shan. Code, supra. The plaintiff's assignment of error is overruled.

It results that the judgment of the circuit court is affirmed, and a judgment will be entered accordingly. One-half the costs of the

appeal will be adjudged against the defendant Reagan and the surety on his appeal bond, and the remaining one-half of the costs of the appeal will be adjudged against the plaintiff Conatser and the sureties on his appeal bond.

Crownover and DeWitt, JJ., concur.