HINTON *v.* INSURANCE CO. ·

'(*Nashville.* December Term, 1902.)'

1. **BILLS OF EXCEPTION.** Rule limiting time for filing, may be made; a nullity if filed after time or not affirmatively appearing to have been filed within the time.

A general rule or order applicable to all cases, or a special rule or order applicable to a particular case, may be made by the court prescribing a reasonable and limited time for the preparation and filing of bills of exception, during the term; and where such a general or special rule is made, or time for filing the bill of exceptions is extended beyond the term under the statute providing therefor, it must affirmatively appear to the supreme court that the bill of exceptions was filed within the time limited, otherwise it will not be considered, and if the record without such bill of exceptions shows no reversible error, the judgment below will be affirmed. (*Post, pp.* 117-120.)

Act cited: Acts of 1899, ch. 275.

Cases cited and approved: Muse v. State, 106 Tenn., 181; Jones v. Moore, 106 Tenn., 188; Wright v. Redd, 106 Tenn., 719; Patterson v. Patterson, 89 Tenn., 151; Mallon v. Mfg. Co., 7 Lea, 62, 66; Sikes v. Ransom, 6 Johns., 279.

2. **SAME.** Filed during term, if no rule to the contrary, but this is not a matter of right.

While a bill of exceptions may be properly made up at any time during the term, if there be no rule or order to the contrary in the court in which the case is tried, yet a party is not entitled as a matter of right to the whole of the term in which to present it. (*Post, p.* 118.)

110 Tenn—8

Cases cited and approved: Mallon v. Mfg. Co., 7 Lea, 62, 66; Patterson v. Patterson, 89 Tenn., 151; Sikes v. Ransom, 6 Johns., 279.

3. **SAME.** Suggestion of diminution of record after decision allowed so as to show bill of exceptions filed within time, when. Where the court raises the question and determines the point upon the record, without any suggestion or argument of counsel, that the bill of exceptions was not filed within the limited time, prescribed by the lower court, an application by petition to be permitted to suggest a diminution of the record, and that upon the correction of a suggested error in dates being made, the cause be reheard, will be allowed. (*Post, p.* 121.)

4. **SAME.** Same. Record corrected upon admission of counsel without actual suggestion of diminution or award of certiorari. Where the answer to such petition admits its allegations that the mistake alleged existed, it is not necessary that the suggestion of diminution should be actually made or *certiorari* awarded—the admissions contained in the answer to the petition when taken in connection with the petition, supplying the place of both and correcting the record so as to show that the bill of exceptions was filed in time. (*Post, p.* 121.)

5. **SUPREME COURT PRACTICE.** Trial before circuit judge without a jury and without legal request for written findings, and weight of his findings and judgment. No remandment, when. Where the case is tried before the circuit judge without the intervention of a jury, and without a legal request for written findings, his judgment and his voluntary findings, if he file any, are to be treated like the verdict of a jury, when attacked on the ground that there is no evidence to support the findings or judgment. In such case, if there is any evidence to sustain the judgment, and if there be no other reversible error, the supreme court will affirm the judgment, but if there be no evidence to support the findings or judgment, or if they were based upon in-

Hinton v. Ins. Co.

competent evidence, or if they are found fatally erroneous upon other grounds, the supreme court will then, upon consideration of the testimony at large, render such judgment as the circuit judge should have rendered, without remandment, except in special cases where a new trial is required to meet the ends of justice. (*Post, pp.* 128-130.)

Cases cited and approved:    Fogg v. Gibbs, 8 Baxt., 469; Wheeler v. State, 9 Heisk., 393; Dawson v. Holt, 11 Lea, 589; Smith v. Hubbard, 85 Tenn., 306; Eller v. Richardson, 89 Tenn., 576; Glasgow v. Turner, 91 Tenn., 163; Simmonds v. Leonard, 91 Tenn., 183; Woodall v. Foster, 91 Tenn., 195; Montague v. Thomason, 91 Tenn., 168; Cowan v. Mfg. Co., 92 Tenn., 376; Settle v. Marlow, 12 Lea, 474; Stephens v. Mason, 99 Tenn., 512.

6.  **SAME.  Requisites and defects of written findings of fact by the trial judge; what the record will be examined for; remandment upon reversal, when.**

Where, under a proper request, the trial judge has made a decision in writing stating the facts found and the conclusions therein in accordance with the statute, the supreme court can look to the record or bill of exceptions as a part thereof, only for the purpose of ascertaining whether there is any evidence to support the findings, or whether there is any error in the admissions or rejection of evidence, or whether such findings contain a substantial and intelligible response to the contentions of the parties as they appear in the evidence considered in relation to the pleadings; and if it appears that the findings are proper in their technical frame and substance, then the supreme court confining itself wholly to the facts contained in the findings will determine the question of law arising from those facts and either affirm, modify or reverse the judgment of the court below; but if there is no evidence to support the findings, or if the findings do not contain •a substantial response to the request therefor, or if unintelligible, or so framed that no judgment can be safely pronounced therein one way or the other,

the supreme court will reverse and remand for a new trial. (*Post, pp.* 130-131.)

Code cited and construed: Sec. 4684 (S.); 3673 (M. & V.); 2959 (T. & S. and 1858).

Cases cited and approved: McHale v. Wellman, 101 Tenn., 150, 153; Stanley v. Donoho, 16 Lea, 495.

7. **CIRCUIT COURT PRACTICE. Duty of counsel as to omissions from written findings of fact by trial judge.**
It is the duty of counsel in the court below to call the court's attention to any material facts in the record omitted from the written findings of fact made in pursuance of a proper request therefor under the statute and ask to have them incorporated. (*Post, p.* 131.)

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County.—JOHN W. CHILDRESS, Judge.

TIP GAMBLE, for Hinton.

A. F. WHITMAN, for Insurance Company.

MR. JUSTICE NEIL delivered the opinion of the Court.

This suit was begun on the 22d day of May, 1902, before a justice of the peace of Davidson county, on a pol-

icy of insurance for $156. In that tribunal the cause was decided in favor of the defendant, and from this judgment the plaintiff presented an appeal to the circuit court of the county.

In that court the cause was again tried, and judgment rendered in favor of the plaintiff on May 26, 1902, for $157.67, being the original sum sued for, with interest, and for all of the costs of the cause. On July 19, 1902, a motion for a new trial was made and overruled, whereupon the defendant insurance company prayed and was granted an appeal to this court, and was allowed ten days to file a bill of exceptions; but that bill of exceptions was not filed until August 5, 1902, which was seventeen days after July 19th, and seven days beyond the time allowed.

The rule is that, when time is allowed to file a bill of exceptions, and it is not filed until after the time has elapsed, it cannot be looked to on the trial of the cause in this court (*Muse* v. *State,* 106 Tenn., 181 61 S. W., 80; *Jones* v. *Moore,* 106 Tenn., 188, 61 S. W., 81), and in such a case no other result can follow in this court, so far as depends upon the matters which should be contained in the bill of exceptions, except an affirmance of the judgment of the court below. *Wright* v. *Redd Bros.,* 106 Tenn., 719, 63 S. W., 1120.

It is true that the cases just cited were addressed to chapter 275, Acts 1899, which was enacted for the purpose of allowing time after the adjournment of court for the preparation of bills of exceptions, while in the case

before us it does not appear whether the ten days allowed would have carried or did carry the case beyond the adjournment of the term. But the principle is clear that, when time is allowed for the filing of a bill of exceptions, it must affirmatively appear that it was filed within that time; otherwise this court cannot look to it.

Again, if we should concede that the bill of exceptions could be lawfully filed after the expiration of the ten days, and within the term, it does not affirmatively appear that August 5th was within the term; and this fact we should be enabled to determine from the record, but this record we have before us is silent upon the subject. All that we have is that ten days were allowed for the filing, and the filing did not take place until seventeen days had elapsed. So, *prima facie,* in any event, the bill of exceptions was filed too late, and there is nothing in the record to rebut this presumption against it.

While a bill of exceptions may be properly made up at any time during the term, if there be no rule or order to the contrary in the court in which the case was tried (*Patterson* v. *Patterson,* 89 Tenn., 151, 14 S. W., 485), yet a party is not entitled as a matter of right to the whole of the term in which to present it. *Mallon* v. *Tucker Mfg. Co.,* 7 Lea, 62, 66; *Sikes* v. *Ransom,* 6 Johns., 279.

In *Mallon* v. *Tucker Mfg. Co.,* it was held that a general rule was not unreasonable which fixed fifteen days as the limit within which bills of exceptions were required to be presented after the verdict of the jury, or

after the decision of the cause by the judge in non-jury cases.   We see no reason why an order limiting the time for such preparation and filing may not be made in individual cases, and why, in the absence of a compliance with such order, the right to file may not be denied altogether.   Without doubt the right to make such order would be of the greatest service to the parties in many cases where the terms of courts are long, and the facts in the cases supposed are numerous and complicated, and the questions arising are many; such cases, in short, as would in all probability soon slip from the memory of the circuit judge, and make the preparation of the bill of exceptions a work of an exceedingly uncertain and unsatisfactory nature.   Indeed, the conceded right to make such an order giving reasonable time, applicable to all cases, necessarily involves and includes the right to make it in each individual case, on the principle that that which is just as to the whole is just as to each of the parts composing that whole.

Moreover, even in the absence of such general order, no question of unfair discrimination could arise between different cases in the same court, because, while a limiting order may not be made in one case, yet may be made in another, there is always to be determined by this court the question of the reasonableness of the length of time given, which must to a great extent be measured by the nature of the case itself.

Applying the principle to the present case, the court can see that the facts are so few, and the record so small,

the time allowed for the preparation of the bill of exceptions was not only reasonable, but most ample.

The bill of exceptions not having been filed in time, this court cannot look to it, and hence, as the record now stands, there is nothing to show error in the judgment of the court below.

### ON PETITION TO REHEAR.

MR. JUSTICE NEIL delivered the further opinion of the Court.

This case, under the style of "W. A. Hinton vs. Sun Life Insurance Company," was heard on a former day of the term, and an opinion was then rendered directing an affirmance of the judgment of the court below, on the ground that the bill of exceptions was filed after the expiration of the time granted by the circuit judge, and that there was, therefore, nothing upon which the plaintiff in error could assign error.

The plaintiff in error has now presented a petition showing that there was a mistake in the transcript by reason of the failure of the clerk of the circuit court to make a true copy, and that with this error corrected it would appear that the bill of exceptions was to be filed within ten days from July 26th, instead of from July 19th, as the record shows. The prayer of the petition is that the plaintiff in error be allowed to suggest a diminution of the record, and that, upon the correction as to dates being made, the cause be reheard. The attorney for the defendant in error has filed an answer to the

petition admitting its allegations, but insisting that it was the duty of the opposing counsel to examine the record before the original hearing in this court, and to have the correction then made, and that it is now too late. To this, counsel for plaintiff in error replies that it was a mistake only as to dates; that such a mistake easily escapes the attention; that no point was made upon the bill of exceptions by counsel for defendant in error on the previous trial, but that this court itself raised the question, and plaintiff in error was not aware of its existence until the opinion came in, and that the determination of the case upon this point has operated in the nature of a surprise upon plaintiff in error.

Although the application comes late, we think that under the facts stated it should be allowed. It is not necessary, however, that the suggestion of diminution should be actually made, or a *certiorari* awarded. The admissions contained in the answer to the petition, when taken in connection with the petition, supply the place of both, and correct the record so as to show that the bill of exceptions was filed in time.

Before turning to the bill of exceptions it is necessary to call attention to section 4684 of Shannon's Code. This section, referring to the practice of the circuit court, says:

"Upon the trial of a question of fact by the court, the decision, if requested by either party, shall be given in writing, stating the facts found and the conclusions thereon, which shall constitute a part of the record."

It should also be noted that the case was begun before a justice of the peace, and hence there was no pleading setting forth the cause of. action except the warrant. This pleading was in the customary brief form, and was as follows:

"State of Tennessee, Davidson County. To any Lawful Officer of said County: You are hereby commanded to summon Sun Life Insurance Company of America to personally appear before me, or some other acting jus tice of the peace for said county, to answer the complaint of W. A. Hinton in a plea of debt by insurance policy $156 under $500. Given under my hand and seal this 22d day of May, 1902, H. H. Clark, J. P."

His honor, the circuit judge, was properly requested under the section of the Code just quoted, to make writ ten findings of fact and law, and did so in the following language:

"(1) The defendant issued one of its ordinary pol icies upon the life of Ella M. Burnett, December 2, 1895 It is conceded that the policy was regularly issued, and the premium paid up till March 24, 1902. The next payment due was March 31st, which Burnett failed to pay, and three other pay days were passed likewise without payment.

"(2) The court finds as a matter of fact that the insured was four weeks in arrears in the payment of the weekly dues provided for in the contract.

"(3) On the 24th of April the assistant superintendent at Nashville, Rogers, mailed to the home office

Hinton v. Ins. Co.

at Louisville a statement of those in arrears the four weeks, and among the names presented was that of the insured.    The company, through the home office at Louisville, returned to the local office at Nashville a list of the policies lapsed by the company, and the insured's name was amongst that list, to take effect April 28th, and the defendant in this case insists that the insured was more than four weeks in arrears, and her policy had never been revived, in conformity with the rules of the company; that they had a right to lapse and had lapsed her policy to take effect April 28th, as stated.

"(4)    The insured died, as is conceded, on the 11th of May thereafter.    The proof shows that on the 26th of April the insured paid to the local office in Nashville $1.00, and it is insisted that by virtue of that payment her back dues were fully covered, and her dues more than paid to the date of her death, and that by the acceptance of said $1.00 on the 26th of April the company waived any rights they may have had to have lapsed the policy.

"(5)  The receipt given for the $1.00 says as follows: 'Received from Ella Burnett $1.00, being the arrears on policy No. ——, which the applicant desires the company to revive.    Under no circumstances will the company be liable under said policy, in case of death, until the policy has been revived on the books of the company, and the money credited in the premium receipt book belonging to said policy.    [Signed]    Hogan, Agent.'

"(6)    A stipulation in the face of the policy provides

that when a party is in arrears for four weeks, and desires to be reinstated, upon the payment of all arrears the company will reinstate the party if the physical examination shall be satisfactory.

"(7) Across the face of said receipt is the following: 'If the company accept the revival application, the amount paid will be credited on the premium receipt book belonging with the policy; otherwise the money will be returned.'

"(8) The defendant insists that, while it received this money, it had no opportunity to make the personal examination of the insured, to see if she was in proper condition for it to have been willing to revive the policy; that her address was unknown to it, and she could not be found for the purpose.

"The company had a stipulation with the insured that her address should always be furnished to it.

"(9) Between the time the dollar was paid and her death was seventeen days; and

"(10) The court is of opinion, and so holds, that it was their duty, under their contract and agreement with the insured, to have found her and made such examination as they desired. But, failing in this, the insured had a right to presume, as they did not return her money to her, that they had accepted her money and revived her policy, and that, therefore, they cannot now insist upon the nonpayment of the sum stipulated in the policy.

"(11) Therefore the court holds, and so finds, that,

while the insured had been in arrears upon her policy more than the four weeks stipulated in the policy, yet, having tendered and paid to the company, or its duly authorized agent, a sum that more than paid all dues to the company, and they having held the same seventeen days without making an examination of her, or offering to do. so, and failing to return her the money, they thereby waived any right they may have had in the premises; and it being conceded that the insured died, judgment will be rendered against the defendant company for $—— and interest thereon from the time same should have been paid to this date."

On the foregoing findings, judgment was rendered against the company for $156, the amount of the policy, and $1.67 interest,—in all $157.67,—and all of the costs of the cause, and an appeal was prayed and obtained by the company.

On comparing these findings with the bill of exceptions, it appears that certain important facts are omitted. Among those omissions is the policy itself. This being the contract sued on, it constitutes not only an important fact but a vital one. His honor says that the company issued one of its ordinary policies, but does not state what the terms of such ordinary policies are.

In reaching the conclusion stated in the several findings, his honor evidently had before him the policy, and in determining whether, under the facts stated in the first policy, the defendant in error was in arrears, construed the policy; but this court, not being able to look

at the policy for the purpose of determining the merits, because not contained in his honor's findings, cannot review his construction, and thereby decide as to its correctness or the contrary.

The third finding cannot be properly understood without reference to certain facts appearing in the testimony, but not included in his honor's findings, in respect of the practice of the company in carrying out certain provisions of the policy covering forfeitures for the nonpayment of premiums; nor can it be understood without those provisions of the policy. Without these facts it is not possible to understand the significance of the act of the superintendent in mailing the list referred to to the home office, or the returning, by the home office, of its list to the superintendent at Nashville, and the significance of the statement that that list was to take effect on April 28th.

The bearing of the facts contained in the fourth finding cannot be fully ascertained without a reference to and a construction of certain clauses of the policy.

The provisions of the receipt referred to in the fifth finding cannot be understood without reference to the method pursued by the company and its policy holders, under the practice of the company, in cases where policies are sought to be revived after lapse, which is fully shown in the testimony.

The seventh finding cannot be fully understood without this additional fact, and a further explanation of what is meant by the premium receipt book, and its of-

fice in the business of the company, in the matter of the reviving of policies; all of which is fully shown in the testimony.

The first paragraph of the eighth finding does not state facts, but only one of the defendant's contentions. The facts appear in the evidence showing whether this contention was a meritorious one or not, but they are not set out in his honor's findings.   It is stated in the second paragraph of this eighth finding that the insured had agreed to furnish her address to the company, but his honor's findings do  not show whether the address was in fact furnished.   There was sufficient testimony upon the point to support a finding one way or the other.

The bearing of the tenth finding cannot be fully understood without having before us the terms of the contract,—that is, of the policy,—and likewise a statement of the practice of the company in the matter of reviving policies.   Only in the light of these additional facts could the court properly determine whether the assured had the right to rest upon the presumption contained in the said tenth finding.

The same is true of the eleventh finding.   It is impossible to correctly determine whether the waiver there adjudged was correctly adjudged, without having before us the additional facts just referred to.

In the preceding review of his  honor's findings we purposely passed over the sixth one.   We now return to it.   It is insisted in the defendant's brief that no such stipulation appears in the policy. The contention is cor-

rect. Nothing of this kind appears in the face of the policy, or anywhere in or on the policy. There is some evidence contained in the testimony of the witnesses as to the practice of the company in the matter of the reviving of policies bearing upon the point, but nothing in the policy itself.

Taking all of his honor's findings together, it is perceived from what we have already said that they are not sufficiently full to enable us to base any judgment upon them, owning to the omission of the important facts which we have referred to.

The question now to be determined is, whether this court should disregard the findings of the court below, and ascertain the facts for itself, or whether the cause should be reversed, and remanded for a new trial?

When the case is tried before the circuit judge without the intervention of a jury, and he merely renders judgment without making any special findings of fact, the practice is for this court, under the limitations be low stated, to examine the record, and render such judgment on the facts at large as the circuit judge should have rendered. *Fogg* v. *Gibbs,* 8 Baxt., 469; *Wheeler* v. *State,* 9 Heisk., 393; *Dawson* v. *Holt* 11 Lea, 589, 47 Am. Rep., 312; *Smith* v. *Hubbard,* 85 Tenn., 306, 2 S. W., 569; *Eller* v. *Richardson,* 89 Tenn., 576, 15 S. W., 650; *Glasgow* v. *Turner,* 91 Tenn., 165, 167, 18 S. W., 261; *Simmons* v. *Leonard,* 91 Tenn., 183, 194, 18 S. W., 280, 30 Am. St. Rep., 875; *Woodall* v. *Foster,* 91 Tenn., 195, 198, 199, 18 S. W., 241; *Montague* v. *Thoma-*

*son,* 91 Tenn., 168, 176, 18 S. W., 264; *Cowan* v. *Singer Mfg. Co.,* 92 Tenn., 376, 384, 21 S. W., 663.

But while this is the general rule, the court will depart from it, and remand for a new trial, when justice seems to require it in the special case. *Settle* v. *Marlow,* 12 Lea, 474. The same rules govern, even when a special finding of facts and law is filed by the circuit judge, no request under the statute for such special findings having been made of him. *Stephens* v. *Mason,* 99 Tenn., 512, 42 S. W., 143.

Of course, it is to be understood that in this class of cases those tried by the judge without the intervention of a jury, and without a legal request for written findings, his judgment, and his voluntary findings if he file any, are to be treated like the verdict of a jury when attacked on the ground that there is no evidence to support such judgment or the findings, as the case may be.

In such a case the court will refer to the bill of exceptions to ascertain whether there is any evidence to sustain the judgment. Upon discovering such evidence, no other objection being made, or, if made, not being found tenable, the court will affirm. If upon such reference to the bill of exceptions no evidence is found to support the findings or judgment, or if they were based upon incompetent evidence duly objected to, or rendered after excluding competent evidence, or if they are found fatally erroneous upon other grounds, this court will then, upon a consideration of the testimony at large, ren-

der such judgment as the circuit judge should have rendered without a remand, except in the class of cases referred to in Settle v. Marlow, supra.

But in the class of cases we now have before us the court can look to the bill of exceptions only for the purpose of ascertaining whether there is any evidence to support the findings, or any part of them, when attacked on the ground that there is no evidence to support them; or for the purpose of passing upon questions of evidence; or for the purpose of ascertaining whether such findings contain a substantial response to the contentions of the parties as they appear in the evidence considered in relation to the pleadings; or whether such findings, when considered in the relation just indicated, are intelligible, and constitute a substantial response to the request for findings in accordance with the statute.

If such examination shall result favorably to the technical frame and substance of the findings, then the court, confining itself wholly to the facts contained in the findings, will determine the question of law arising upon those facts, and either affirm, modify, or reverse the judgment of the court below. But if, on objection made, it is discovered that there is no evidence to support the findings, or that some substantial part of them is open to this objection, or if a substantial error is made as to the admission or rejection of testimony, or if it be ascertained that the findings do not contain a substantial response to the request, or that they are unintelligible, or so framed that no judgment can be safely pronounced

thereon one way or the other, the court will reverse and remand for a new trial.    This is the practice in the special class of cases we have before us.    *McHale* v. *Wellman,* 101 Tenn., 150, 153, 46 S. W., 448.    And see *Stanley* v. *Donoho,* 16 Lea, 495.

In this case counsel for each side have discussed the matters arising without much reference to the findings of the circuit judge, and have based their respective arguments upon facts found in the bill of exceptions, but not contained in his honor's findings.    This is not the proper practice.    This court cannot look to the bill of exceptions in this kind of case except for the purpose already indicated; nor can the counsel.    It is the duty of counsel in the court below to call the court's attention to any material facts omitted, and ask to have them incorporated.    If this be not done, or if, for any reason, the case be allowed to come to this court with findings so framed as that judgment cannot be safely pronounced thereon in favor of either party, all we can do is to reverse, and remand for a new trial.    Such must be the judgment in the present case.    Therefore, the petition for rehearing having been granted, the judgment, heretofore rendered in this court affirming the judgment of the court below will be set aside, and the judgment of that court will be reversed, and the cause remanded for a new trial.