Insurance Co. v. Witherspoon.

CITIZENS' NATIONAL LIFE INSURANCE COMPANY *v.* WIL-
LIAM WITHERSPOON.

*(Nashville.  December Term, 1912.)*

1. **CIRCUIT COURT PRACTICE.  Finding of facts signed by trial
judge may itself show seasonable request therefor, without bill
of exceptions or minute entry.**

The trial judge's written finding of facts, when authenticated and
identified by his signature, appearing in the transcript duly
certified by the clerk of the trial court, may, by its own re-
citals, sufficiently testify to the fact that it was seasonably re-
quested; that is to say, at or upon the trial of the cause, and be-
fore the decision thereof and judgment thereon; for such written
finding of facts, when so authenticated and upon being filed in
the cause, becomes a part of the record by operation of the
statute (Shannon's Code, sec. 4684) authorizing    the    same.
(*Post, pp.* 366, 367, 369, 370.)

Code cited and construed: Sec. 4684 (S.); sec. 3673 (M. & V.);
sec. 2959 (T. & S. and 1858).

Cases cited and approved: Hinton v. Insurance Co., 110 Tenn., 130,
131; Railroad v. Foster, 112 Tenn., 346.

2. **SAME.  Same.  Written finding of facts sufficiently showing a
request therefor during the trial.**

Under the statute (Shannon's Code, sec. 4684) providing that,
"Upon the trial of a question of fact by the court, the decision
if requested by either party, shall be given in writing, stating
the facts found and the conclusions thereon, which shall con-
stitute a part of the record," such decision, signed by the trial
judge, which, after showing the correct style of the cause, and
the court in which it was pending, recites that, "At the trial of
this cause the defendant requested a written finding of facts by
the court, and the same is herewith made," followed by the find-
ing of facts and the conclusions and decision thereon, sufficient-

ly shows that the request for the written finding of facts was made during the trial, so as to be a part of the record, though the date of filing is the same as that of a minute entry showing the motion for a new trial four days after the trial and judgment; for the word "at," so used by the trial judge, has the same meaning as the word "upon" in said statute. (*Post, pp.* 366-369.)

Code cited and construed: Sec. 4684 (S.); sec. 3673 (M. & V.); sec. 2954 (T. & S. and 1858).

Cases cited and approved: Parham v. Gibbs, 16 Lea, 296; Stanley v. Donoho, 16 Lea, 495; Stephens v. Mason, 99 Tenn., 513; McHale v. Wellman, 101 Tenn., 152; Hinton v. Insurance Co., 110 Tenn., 130, 131; Railroad v. Foster, 112 Tenn., 346.

3. WORDS AND PHRASES. Words "at the trial" have same meaning as words "upon the trial."

The words "at the trial," used in a written finding of facts, have the same meaning as the words "upon the trial" used in the statute (Shannon's Code, sec. 4684) providing for written finding of facts. (*Post, p.* 368.)

Code cited and construed: Sec. 4684 (S.); sec. 3673 (M. & V.); sec. 2959 (T. & S. and 1858).

4. CIRCUIT COURT PRACTICE. Written finding of facts filed during term is a part of the record, though not filed until after motion for a new trial was overruled.

Under the statute (Shannon's Code, sec. 4684), providing for written finding of facts by trial judge, and declaring the same to be a part of the record, such finding is a part of the record, if filed during the trial term, though after the judgment was rendered and the motion for a new trial was considered and overruled; for said statute does not prescribe the time of filing of the written finding of facts, and the court would nullify the statute by holding that the finding in such case is not a part of the record. (*Post, p.* 370.)

Code cited and construed: Sec. 4684 (S.); sec. 3673 (M. & V.); sec. 2959 (T. & S. and 1858).

5. SAME. Either party may request additional written findings, and if refused, may file bill of exceptions.

If either party to a suit is dissatisfied with the written finding of facts, made by the trial judge, under request therefor, as required by statute (Shannon's Code, sec. 4684), such party may protect his rights, by request for additional findings; and, if these be not made, by bill of exceptions. (*Post, p.* 370.)

Code cited and construed: Sec. 4684 (S.); sec. 3673 (M. & V.); sec. 2959 (T. & S. and 1858).

Case cited and approved: Hinton v. Insurance Co., 110 Tenn., 130, 131.

6. SAME. Extension of time for preparing and filing written finding of facts.

Where the written finding of facts is filed at or near the end of the trial term, or is then requested, when there is not sufficient time for the trial judge to prepare and file it before the end of the term, the trial judge may save the rights of the parties by proper order made in the cause, or by leaving open the minutes of the term at which it was requested. (*Post, p.* 371.)

Case cited and approved: Dunn v. State, 127 Tenn., 267.

7. APPEALS. Conclusions of law upon facts found in written finding is not conclusive on appellate courts.

The trial judge's conclusions of law upon the facts as found in his written findings in pursuance of request under the statute is not conclusive upon the appellate courts. (*Post, p.* 371.)

8. LIFE INSURANCE. Compensation of agent by a percentage on premiums is measured by premiums actually received, and not by what might have been received on a substituted policy if it had been issued at first.

Where the State agent of a life insurance company, while under a contract fixing his compensation at certain percentages on the first year's premiums, varying according to the form of the policy, and a renewal commission of ten per cent. on all subsequent cash premiums, wrote a convertible term annual dividend policy for $5000, and received his commissions on the premiums

Insurance Co. v. Witherspoon.

until its termination, at which time the insured converted it into another form of insurance and received a new policy, dated as of the date of the first policy; and the total of premiums paid during the term of the first policy was the sum of $372.75, and the total of premiums which the insured would have paid during that time, had he originally taken out the second policy, was the sum of $1,334.50, and the action was brought for a commission of ten per cent. on the difference, namely, on the sum of $961.75; it was *held* that the plaintiff's commissions were measured by what the company actually received as premiums, and not by what it might have received, if the parties in the first instance had executed the second policy, so that he could not recover. (*Post, pp.* 371-375.)

## FROM DAVIDSON.

Appeal from the Second Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.— M. H. MEEKS, Circuit Judge.

ROBIN J. COOPER, for Insurance Co.

HARRY S. STOKES, for Witherspoon.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

In transcript in this case, there is a paper purporting to be a finding of facts by the trial judge. It shows the correct style of the cause, and the court in which it was pending, and the day on which the paper

was filed.   After all of the above is made to appear," these words follow:

"At the trial of this cause the defendant requested a written finding of facts by the court, and the same is herewith made."

Then follow the finding of facts and the conclusions and decision thereon, covering pages 3 to 11 of the transcript, and it is duly signed by the trial judge.   The date on which this paper was filed in the office of the clerk of the trial court is the same as the date of a minute entry which shows the overruling of the insurance company's motion for a new trial, and the granting to it of an appeal from the judgment of the trial judge, who disposed of the case without the intervention of a jury. This minute entry is dated July 10, 1912, and recites in its opening sentence:

"This cause came on to be heard on this the 9th day of July, 1912, upon the motion of the defendant for a new trial," etc.

The minute entry preceding this in the transcript shows that the cause was heard and judgment rendered in favor of plaintiff on July 5, 1912.   It is insisted for Witherspoon that, in the above state of the record, the paper purporting to be a finding of facts is not in compliance with section 4684 of Shannon's Code, which provides that:

"Upon the trial in a question of fact by the court, the decision, if requested by either party, shall be given in writing, stating the facts found and the conclusions thereon, which shall constitute a part of the record."

We do not agree with the court of civil appeals in its holding that the record does not show sufficient compliance with section 4684, supra. By that section, when either party requests the written finding, and it is made and signed by the trial judge, and filed, it becomes a part of the record by force of the statute. The signature of the trial judge identifies it, and its recital that it was made upon or at the trial at the request of one of the parties to the suit is sufficiently verified by the signature of the trial judge.

We cannot agree with the court of civil appeals that there is any presumption that the trial judge was not requested in this case to reduce his findings to writing until after the motion for a new trial was made and disposed of, because the contrary is clearly stated in the finding over the signature of the trial judge. He says it was requested "at" the trial, and we think the word "at," so used by the trial judge, has the same meaning as the word "upon" in section 4684, Shannon's Code.

If the finding was requested either "at" or "upon" the trial, it was certainly requested before the decision of the court or rendition of judgment.

In *Parham* v. *Gibbs*, 16 Lea, 296, the request was made two days after the trial, and this court held that it came too late, and said the request should have been made upon the trial.

In *Stanley* v. *Donoho*, 16 Lea, 495, the request was made before the rendition of judgment, and so was held to have been seasonably made, and this court said the statute was imperative, and reversed that case because

of the failure of the circuit judge to comply with the request, and because it could see that the justice of the case required that course. To the same effect is *McHale v. Wellman,* 101 Tenn., 152, 46 S. W., 448.

In *Stephens v. Mason,* 99 Tenn., 513, 42 S. W., 143, the finding relied on recited in its introductory sentence that it was requested "after judgment," and it was held to have come too late, and the suggestion was there made that it would be well for special findings to be made at the commencement of the trial.

In *Railroad v. Foster,* 112 Tenn., 346, 80 S. W., 585, the finding was requested upon the trial. It was made, signed by the trial judge and filed. No bill of exceptions was filed, and it was held there that no bill of exceptions in such case was necessary in order to challenge the correctness of the conclusions of law reached by the trial court upon the facts as found in the writing as signed by him, and thereafter filed, and it was there held, as we hold here, that such written finding, if authenticated by the signature of the trial judge, and upon being filed in the cause, becomes part of the record by operation of the statute. If it had been intended that it should be authenticated further by a minute entry or bill of exceptions, the statute would have been so written.

We think the finding of facts, when authenticated and identified by the signature of the trial judge, appearing in a transcript duly certified by the clerk of the trial court, may, by its own recitals, sufficiently tes-

tify to the fact that it was seasonably requested; that is to say, at or upon the trial of the cause, and before decision thereof and judgment thereon.    For a discussion of the requisites and defects of such findings, see *Hinton* v. *Insurance Co.*, 110 Tenn., 130-131, 72 S. W., 118.

But it is urged that we should hold the finding of facts not to be a part of the record, because it was not filed until after the date when the judgment was rendered and the motion for a new trial was overruled. The answer to this point is that the finding was filed during the term at which the case was tried, judgment was rendered, and the motion for a new trial was considered and overruled.

The statute (section 4684, Shannon's Code) does not require the finding to be filed during the trial, nor before entry of judgment, nor before action by the court on the motion for a new trial; and we would be nullifying the statute to say that the finding in the present case is not a part of the record.

If either party to a suit be dissatisfied with the finding, he may protect his rights, as suggested by the opinion of this court in *Hinton* v. *Insurance Co.*, 110 Tenn., 130, 131, 72 S. W., 118, by request for additional findings, and, if these be not made, by bill of exceptions.

This record contains no suggestion that either party was dissatisfied with the finding of facts made by the trial judge.    Manifestly, the plaintiff was satisfied both with his finding of facts and conclusions of law.    Plaintiff recovered a judgment.    He asked for no additional

findings, and took no bill of exceptions. The defendant is here, not complaining of any finding of fact, but alone of the conclusions of law upon the facts as found.

Therefore we can see no just or sound reason why the finding should not stand as a part of the record according to the mandate of the statute. If a finding of fact be filed at or near the end of a term of court, or if it be then requested, and there be not time for the trial judge to prepare and file it, he may save the rights of parties to the suit by proper order made in the cause, or by leaving open the minutes of the term at which it was requested. *J. M. Dunn* v. *State,* 127 Tenn., 267, 154 S. W., 969, decided at the present term, and cases cited therein.

We now come to consider whether the circuit judge and the court of civil appeals correctly applied the law to the facts as found. We think both courts were in error.

On February 15, 1905, the parties to this suit entered into a contract by which Witherspoon was made manager for the State of Tennessee, with power to appoint agents, to solicit insurance, and otherwise promote the interest of the company. He was also allowed to solicit insurance himself as an agent of the company. As compensation for his services, he was to receive a percentage on first year's premiums as the same were paid in cash according to schedule in the contract set out; his percentage varying according to the form of the policy, but ranging from twenty-five as the lowest rate per cent. to seventy-five as the highest rate per cent. In addition to the foregoing compensation, Witherspoon was to re-

ceive a renewal commission of ten per cent: of all premiums received in cash by the company subsequent to first year's premiums on insurance written in the State of Tennessee during the continuance of the contract between the parties.

Under the foregoing contract, Witherspoon wrote what was known as a five-year convertible term annual dividend policy upon the life of W. L. Crouch in the sum of $5,000. This policy was issued by the company on April 28, 1906. The annual premium on this policy amounted to $74.55. Witherspoon was paid his percentage on this premium, to wit, fifty per cent. of the total first year's premium, by the company. The insured, Crouch, paid the annual premiums on this policy for the full term of five years, and on each of the annual premiums after the first year's premium Witherspoon was paid ten per cent. by the company. During the fifth year, the company and the insured, Crouch, effected a conversion of the first policy into another form of insurance, and issued a new policy, which was dated back so as to correspond in date with that of the first policy. The second policy, however, called for an annual premium of $266.90; and, after this conversion of the first policy into the second one, the company annually paid to Witherspoon ten per cent. upon the increased annual premium occasioned by the substitution of the second form of insurance for that which at first existed. The estimated cost to the company of converting the insurance contract from the first to the second form was the sum of $147.81. This amount Crouch, the

insured, paid to the company at the time of its issuance of the second form of insurance. This amount was in no sense a premium on either policy. No other cash than that last above mentioned, and the payment by Crouch of the annual premiums on the second form of policy as these premiums matured has passed from Crouch to the company as a result of the conversion of the first form of policy into the second form.

But, at the time of this conversion, the legal reserve on the second form of policy was $879, which amount the insurance department of the State of Kentucky, which State was the domicile of the company, required the company to keep on deposit with the State treasurer as a legal reserve on the Crouch policy. In lieu of depositing the sum of $879 in cash, however, the State treasurer of the State of Kentucky accepted what is called a loan agreement, which was made between the insured and the company at the time the first form of policy was converted into the second. No loan of cash was in fact made, but this loan agreement was for the sum of $879, and recited that the company had loaned that amount to Crouch, the insured, and that, in order to secure repayment of the same to the company, Crouch had pledged to and deposited with the company the second insurance policy, to be held until the amount of the loan and interest thereon at five per cent. should be paid to the company.

The total premiums paid by Crouch to the company for the five years on the first policy amount to the sum of $372.75. The total premiums which Crouch would

have paid to the company during these five years, had he originally taken out the second policy, is the sum of $1,334.50. The difference between these two amounts is the sum of $961.75, for ten per cent. on which latter amount Witherspoon brought this suit before a justice of the peace, and there recovered a judgment for $96.17. This judgment, on appeal, was affirmed by the judge of the circuit court, and his judgment was affirmed by the court of civil appeals.

The theory underlying the recovery which has been allowed Witherspoon by the three courts appears to be that he is entitled to recover from the company ten per cent. of $961.75, which would have been paid by Crouch to the company in premiums during the five years, if Crouch had taken out the second form of policy instead of the first.

We cannot agree with this construction of the contract. Witherspoon's right of recovery under his contract is measured by the cash which the company did receive as premiums, and not by the sum which it might have received if the parties had made the second contract in the first instance. There is no obligation on the part of Crouch, the insured, to pay the company in cash the above difference in premiums, nor is there any obligation under the so-called loan agreement upon Crouch to pay to the company the amount named in that agreement. That amount is merely a credit to the company in the event it shall become liable to the beneficiary in the second insurance policy by reason of the death of Crouch while that policy is in force and effect.

But, if Crouch should forfeit the second policy by nonpayment of premiums thereon, the so-called loan agreement would be unenforceable as an obligation against Crouch. This much is clear from the terms of that agreement. We are, therefore, unable to see that Witherspoon was entitled to treat either the loan agreement or the difference in premiums as cash received by the company.

From these views, it results that the writs of *certiorari* and *supersedeas* will be granted as prayed for in the petition, and the judgment of the court of civil appeals will be reversed, and this suit dismissed, at Witherspoon's cost.